UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CAROLINE WALTERS,

       Plaintiff,

v.                     Case No: 2:14-cv-602-FtM-29MRM

ROBERT A. MCDONALD, in his
official    capacity    as
Secretary, Department of
U.S. Veterans Affairs,

       Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on the defendant's Dispositive Motion for Summary Judgment (Doc. #28) filed on May 4, 2016. Plaintiff filed a Memorandum of Law in Opposition (Doc. #30) on May 16, 2016, to which defendant filed a Reply (Doc. #34) on June 3, 2016. For the reasons set forth below, the motion is granted.

**I.**

    Plaintiff Caroline Walters ("plaintiff" or "Walters") filed a two-count Complaint (Doc. #1) against defendant United States Veteran Affairs ("defendant" or "V.A.") alleging that the V.A. unlawfully discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII). The undisputed facts are as follows:

On January 17, 2012, plaintiff was hired at the Bay Pines Veterans Affairs Medical Center (VAMC) in Fort Myers, Florida. (Doc. #28, p. 4.)[1]  Plaintiff was employed in the radiology department as a Medical Support Assistant (MSA). (Doc. #28, p. 5.) As an MSA, plaintiff's primary responsibility was to schedule medical appointments for veterans. (Id.)  Plaintiff's direct supervisor was Bonnie Mellady. (Id.)

Plaintiff was subject to a one year probationary/trial period. (Id. at 4; Doc. #28-3; Doc. #28-4.)  The V.A. Healthcare System policy provides that "[e]mployees . . . are required to serve a probationary period in keeping with the provisions of the Code of Federal Regulations (CFR)." (Doc. #28-4, p. 2.)  It further provides that

> [t]he probationary/trail [sic] period provides the final step in determining the overall qualification and ability of the employee to perform their assigned tasks and provides protection against the retention of any person who, in spite of having passed preliminary tests or through self-certification, fails to meet the requirements of the position.

---

[1] In responding to defendant's Motion for Summary Judgment, plaintiff has identified factual paragraphs within defendant's Motion for Summary Judgment that are "disputed." (Doc. #30, pp. 3-12.)  The Court deems that the factual background paragraphs that have not been identified as "disputed" are undisputed.  Further, the Court notes that many of the paragraphs identified by plaintiff as "disputed" either do not provide any evidentiary support as to why they are disputed or they cite to portions of the record that are entirely unrelated to the "disputed" allegation.  This is insufficient to create a disputed fact.

(Id.)[2]  "The probationary period is an extension of the interview process" and "is a final and highly significant step in the examination process for federal employment."  (Doc. #28-4, p. 3.)

In April, 2012, Lorie Aleshire, the Chief Technologist in the radiology department, reported to Bonnie Mellady that despite plaintiff having two months under her belt, plaintiff "continue[d] to make multiple errors which are having a negative impact on patient care and throughout."  (Doc. #28-7, pp. 2-3, 6.)  Lorie Aleshire listed four errors made by plaintiff in a single day. (Id. at 3, 6.)

On April 23, 2012, pursuant to the probationary employment protocol, plaintiff received her ninety-day evaluation of her performance by Ms. Bonnie Mellady.  (Doc. #28, pp. 5-6; Doc. #28-8.)  The ninety-day evaluation reported that plaintiff

> has good intentions, however, has been found to make
> excessive mistakes in her scheduling practices.  This
> has been reported to me by the Chief of Radiology, Lorie
> Aleshire, the Nuc med technician, Mary Jo Lawrence, MSA,
> Kim Warner, Lead of the Naples CBOC, Shelly Fouch, and
> the Ultrasound technician, Maggie Paulis.

---

[2] This is an example of an allegation that is identified as disputed, yet doesn't provide proper support.  Plaintiff claims that this paragraph is "disputed" based upon plaintiff's testimony that she was not provided additional training.  (Doc. #30, p. 3.) The Court does not deem the reason provided by plaintiff to be related to the fact that this statement is contained in the V.A. Healthcare System policy.

(Doc. #28-8, p. 2.) Plaintiff admits that prior to April 23, 2013, she had made at least "a few" mistakes. (Doc. #28-2, p. 17.)

On April 24, 2012, the day after plaintiff's ninety-day evaluation, plaintiff contacted the EEO representative, Joan Harris, to make a complaint of "discrimination based on gender, race, and retaliation" against Bonnie Mellady. (Doc. #28, p. 6; Doc. #28-2, p. 19; Doc. #28-9.) Specifically, the EEO Complaint contained the following eight allegations of discrimination against Bonnie Mellady:

1. On or about 1-17-12 she made the comment that she was "surprised that I was not fat."

2. Intimidating and belittling tone about reviewing my personnel file.

3. She consistently felt that I was not able and capable of "learning" the requirements and duties [of the] radiology department. "Excessive errors & I was not getting it."

4. On 4-23-12 she confrontationally presented me with a letter of evaluation and asked me "Why are you here" (I am a veteran and I have 13 years prior civil service – service comp. date of 01-09-83; service connected; and Bachelors in History, and Business Administration/Management, plus currently enrolled in Graduate School – Masters in Public Health).

5. I feel that she unfairly questioned the way I dressed and willingly to compare to "dress code."

6. She asked me if "I make me nervous."

7. I complained of my co-worker abrasive and hostile behavior and requested a department transfer and feel that I'm being retaliated against for doing so.

> 8. I took a couple of unscheduled days of sick leave on
>    4/18 and 4/19 (for my personal well-being and health)
>    she appeared upset and that I had no right.

(Doc. #28-9, p. 3.)   After plaintiff's ninety-day evaluation,

plaintiff recalls making at least one more error.  (Doc. #28-2, p.

26.)

In May of 2012, Allyn Kilcrease[3] became plaintiff's second-

line supervisor.  (Doc. #28, p. 7.)  In May, additional complaints

regarding mistakes made by plaintiff were reported.  (Id. at 7-

8.)  One complaint involved an incident where plaintiff allegedly

scheduled the wrong patient for a nuclear medical test.  (Id. at

7.)  The patient was prepped for the test, laying on the table,

and about to have the radioactive isotopes injected into his body,

when the error was discovered by the technologist.  (Id. at 7-8.)

Plaintiff denies this incident occurred.  (Doc. #30, p. 8.)

On May 17, 2012, a meeting was held between plaintiff, Allyn

Kilcrease, and others.  (Doc. #28, p. 8; Doc. #28-2, pp. 27-28;

Doc. #28-13.)   The main topic of discussion was plaintiff's

performance — specifically mistakes made by plaintiff over the

previous ninety days.  (Doc. #28-2, pp. 27-28; Doc. #28-13.)

Plaintiff admitted that she made mistakes over the duration of her

employment, and has since acknowledged that "[i]f [she] had known

---

[3] Allyn Kilcrease's last name was subsequently changed to
Mamalakis.  (Doc. #28, p. 7 n.2.)

[she] was going to be held accountable [for] mistakes from day one[, she] would have probably not made mistakes." (Doc. #28-2, p. 23.)

On May 22, 2012, Allyn Kilcrease requested plaintiff's probationary employment be terminated. (Doc. #28-12, p. 10.) On June 25, 2012, plaintiff was provided with correspondence terminating her probationary employment with VAMC effective July 1, 2012. (Doc. #28-14.) On October 3, 2012, plaintiff filed a formal complaint with the EEO alleging that she was discriminated against in the following eight ways:

1. On January 17, 2012, the complainant's supervisor, Bonnie Mellady, commented that she was "surprised" that the complainant "was not fat."

2. When the complainant took sick leave on April 18th through April 19th, 2012, Bonnie Mellady gave the impression that she was "upset" and that she thought the complainant had no right to take the leave.

3. On April 23, 2012, Bonnie Mellady issued the complainant a letter of evaluation in a "confrontational" manner and asked, "Why are you here?"

4. On June 25, 2012, the complainant was notified that the decision was made to terminate her Career Conditional Appointment as a Medical Support Assistant during her probationary period effective July 1, 2012.

5. Bonnie Mellady exhibited an "intimidating and belittling" tone when reviewing the complainant's personnel folder.

6. Bonnie Mellady consistently indicated that she felt the complainant was not capable of learning the

requirements and duties of her position while accusing her of making "excessive errors" and "not getting it."

7. Bonnie Mellady "unfairly" questioned the complainant about the way she dressed in comparison to the facility dress code.

8. Bonnie Mellady asked the complainant if she made her nervous.

(Doc. #28, pp. 10-11; Doc. #28-6, pp. 5-6.)  On June 18, 2013, the VA issued a Final Agency Decision finding that no discrimination had occurred.  (Doc. #1, ¶ 34; Doc. #28, p. 11.)

On October 17, 2014, plaintiff filed the underlying Complaint alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and retaliation.  (Doc. #1.)  Defendant now moves for entry of summary judgment as to both counts.  (Doc. #28.)  As to plaintiff's racial discrimination claim, defendant asserts that plaintiff cannot allege a prima facie case of discrimination because (1) some allegations of discrimination are time-barred, (2) there is no direct evidence of discrimination, and (3) plaintiff cannot establish discrimination by circumstantial evidence because the only adverse employment action was her termination and she has not shown that there are similarly situated individuals that were treated more favorably.  (Id. at 15-25.)  Defendant asserts that even if plaintiff has established a prima facie case of racial discrimination, defendant is still entitled to entry of summary judgment because it had a legitimate, non-discriminatory reason for plaintiff's termination, and

plaintiff has not established that such reason was a mere pretext. (<u>Id.</u> at 25-26.)  As to plaintiff's claim for retaliation, defendant asserts that it fails as a matter of law because (1) plaintiff cannot establish a causal connection between the EEO complaint and her termination and (2) defendant's decision to terminate plaintiff was based upon a legitimate non-discriminatory reason, entirely unrelated to plaintiff's EEO complaint.  (<u>Id.</u> at 26-30.)

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."  <u>Baby Buddies, Inc. v. Toys "R" Us, Inc.</u>, 611 F.3d 1308, 1314 (11th Cir. 2010).  A fact is "material" if it may affect the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the

non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

### III.

### A. Failure to Timely Exhaust Administrative Remedies

Defendant first argues that plaintiff is barred from asserting claims based upon the actions that occurred during her first week of employment in January 2012.  (Doc. #28, pp. 15-17.) Plaintiff has not addressed this argument in her response. (See Doc. #30.)

"Congress has empowered the Equal Employment Opportunity Commission with the responsibility to issue rules and regulations implementing the provisions of Title VII."  Babb v. McDonald, No.

8:14-cv-1732-T-33TBM, 2014 WL 6886046, at *3 (M.D. Fla. Dec. 8, 2014) (citations omitted).  These regulations, which have the force and effect of law, United States v. Nixon, 418 U.S. 683, 695 (1974), require a claimant who believes she has been subjected to racial discrimination to consult with an EEO counselor within forty-five days of the alleged discriminatory conduct, 29 C.F.R. § 1614.105(a)(1).  The forty-five day period may be waived or extended under circumstances where the employee can show cause for failing to meet the deadline.  29 C.F.R. § 1614.105(a)(2).  Absent waiver or exception, claimants are precluded from filing suit regarding actions that fall outside of the forty-five day period. Hunter v. U.S.P.S., 535 F. App'x 869, 872 (11th Cir. 2013) (citation omitted).  Unlike a hostile work environment claim, the continuing violation doctrine is inapplicable to discrete discriminatory acts.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").  See also Abram v. Fulton Cty. Gov't, 598 F. App'x 672, 676 (11th Cir. 2015).

Here, plaintiff filed her informal EEO complaint on April 24, 2012. (Doc. #28-9.)  Because the allegations of discriminatory conduct constitute discrete discriminatory acts and plaintiff has not brought a claim for hostile work environment, pursuant to 29 C.F.R. § 1614.105(a)(1), conduct that occurred forty-five days

prior to plaintiff first seeking EEO counseling on April 24, 2012 is time-barred and not properly before the Court.

**B. Walters' Racial Discrimination Claim – Count I**

Discrimination claims, whether brought under Title VII, Section 1981, or the FCRA, are subject to the same standards of proof and employ the same analytical framework. Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009) (Title VII and Section 1981 claims employ identical analyses); Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007) (FCRA is construed in accordance with Title VII).  To establish a violation of Title VII, "a plaintiff must show that a challenged action was the result of intentional discrimination on the part of the defendant." Sirpal v. Univ. of Miami, 509 F. App'x 924, 926 (11th Cir. 2013) (citations omitted). A plaintiff may use direct or circumstantial evidence to establish her discrimination claim.[4] Sirpal, 509 F. App'x at 926 (citations omitted).

**1. Direct Evidence of Racial Discrimination**

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." Id. (quoting Standard, 161 F.3d at

---

[4] There is also a third method to establish a prima facie case of race discrimination – by statistical evidence. Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  The third method, however, is not at issue in this case.

1330).[5]  "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate" constitute direct evidence of racial discrimination.  Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  Kilgore v. Trussville Dev., LLC, --- F. App'x ---, No. 15-11850, 2016 WL 1138412, at *6 n.4 (11th Cir. Mar. 24, 2016) (alteration in original) (quoting Standard, 161 F.3d at 1330).  "[S]tatements that are open to more than one interpretation do not constitute direct evidence of racial discrimination" because they require the trier of fact to make inferences.  Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998) (citation omitted).

The only evidence at issue here that could possibly be interpreted as direct evidence of discrimination is the statement

---

[5] In 1999, the Eleventh Circuit utilized a more relaxed definition of direct evidence, defining "'direct evidence,' in the context of employment discrimination law, [to mean] evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic."  Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999).  Eleventh Circuit cases post-dating the decision in Wright have rejected the relaxed standard articulated therein.  See Kilpatrick v. Tyson Foods, Inc., 268 F. App'x 860, 862 (11th Cir. 2008) (per curiam) ("[O]ur case law, both before and since Wright, have used the standard applied by the district court in this case—i.e., that direct evidence in this context means 'evidence, which if believed, proves existence of fact in issue without inference or presumption.'" (citation omitted)).

that Mellady made that she was surprised plaintiff was not fat. The Court has ruled that this discriminatory act is time-barred and not properly before the Court.   Even assuming the statement was not time-barred, the statement at most only suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence.   As such, the evidence is, by definition, circumstantial.   Further, Ms. Mellady was not the decision-maker in regard to plaintiff's termination.

## 2. Circumstantial Evidence of Racial Discrimination

"When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green . . . ." Standard, 161 F.3d at 1331; see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).   Under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the plaintiff must first establish a prima facie case of discrimination.   Standard, 161 F.3d at 1331.   To establish a prima facie case of discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job." Hall v. Dekalb Cty. Gov't, 503 F. App'x 781, 787 (11th Cir. 2013) (citation omitted).   "If the plaintiff presents a prima facie case, the employer must offer a legitimate, non-discriminatory reason for

the adverse employment action.  If the employer does so, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination." Id. (citations omitted).

### a) Membership in a Protected Class

Walters is African-American, and therefore indisputably a member of a protected class. See, e.g., Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga., 448 F. App'x 17, 20 (11th Cir. 2011).

### b) An Adverse Employment Action

An adverse employment action is a "serious and material change in the terms, conditions, and privileges of employment." Rainey v. Holder, 412 F. App'x 235, 238 (11th Cir. 2011) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1238-39 (11th Cir. 2001)).

Defendant admits that plaintiff's termination constitutes an adverse employment action. (Doc. #28, pp. 20-22.) While the Court finds that plaintiff's termination constitutes an adverse employment action, it does not find that plaintiff has alleged any other actions that constitute adverse employment actions.  The manner and tone in which Mellady spoke to plaintiff, plaintiff's allegations that Mellady was upset, plaintiff's performance evaluation, and Mellady's comments to plaintiff regarding the dress code did not amount to a serious and material change in the terms, conditions, and privileges of plaintiff's employment, and therefore do not amount to an adverse employment action.

14

### c) Similarly-Situated Individual(s) Treated Differently

"To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects. If this is not the case, the different application of workplace rules does not constitute illegal discrimination." Brown v. Sch. Bd. of Orange Cty., 459 F. App'x 817, 819 (11th Cir. 2012) (citations omitted); Wilson, 376 F.3d at 1091 ("The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." (citation omitted)). Courts evaluate whether the comparators were involved in the same or similar conduct and whether they were disciplined in different ways. Rioux v. City of Atlanta, 520 F.3d 1269, 1280 (11th Cir. 2008) (citation omitted). The "quality and quantity" of the comparator's misconduct must be nearly identical to the claimant's. Id. (citation omitted). An allegation of merely similar misconduct is insufficient. Id. (citation omitted).

While not directly addressing the issue, the Eleventh Circuit has alluded that probationary employees are not similarly situated to permanent employees. See White v. Hall, 389 F. App'x 956, 960 (11th Cir. 2010) (per curiam) (finding that plaintiff "could not identify any other **probationary** deputy, of any race, who had been insubordinate and had not been fired" (emphasis added)). Various other courts have held that probationary employees are not

similarly situated to permanent employees. See Green v. New Mexico, 420 F.3d 1189, 1194-95 (10th Cir. 2005) (finding probationary employee plaintiff was not similarly situated to two non-probationary employees); George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005) (holding that "probationary employees and permanent employees are not similarly situated [because] under federal regulations, probationary employees may be terminated for problems even if those problems would not be good cause for terminating a permanent employee" (citation omitted)); Steinhauer v. Degolier, 359 F.3d 481, 484-85 (7th Cir. 2004) (finding probationary employee not similarly situated to non-probationary employee); Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000); Blanding v. Pa. State Police, 12 F.3d 1303, 1309-10 (3d Cir. 1993); Ashmore v. F.A.A., No. 11-60272-CIV, 2011 WL 5433924, at *8 (S.D. Fla. Nov. 8, 2011); Moore v. Alabama, 989 F. Supp. 1412, 1416 n.6 (M.D. Ala. 1997) ("[D]uring the evaluation of a plaintiff's prima facie case, it appears that courts should focus on whether employees are similarly situated in terms of disciplinary record and employment status, i.e., whether the employee is probationary, tenured, part-time, etc. . . . ."), aff'd 178 F.3d 1303 (11th Cir. 1999). Conversely, only a few courts have found that probationary employees are similarly situated to non-probationary employees. See Yates v. Hall, 508 F. Supp. 2d 1088, 1100 (N.D. Fla. 2007).

Plaintiff has identified five individuals that she claims were similarly situated yet treated more favorably than she was. (Doc. #28-2, pp. 29-42; Doc. #28-15, pp. 7-8.) Of these five individuals, not one of them was a probationary employee. (Doc. #28-2, pp. 30, 32, 34, 36, 40.) Accordingly, the Court finds that they are not similarly situated individuals.

Even assuming that they were probationary employees, the employees identified are not similarly situated to plaintiff. Mary Paulis and Sherry Fouch held a different position, worked in a different office, and/or had different job duties than plaintiff. (Id. at 31-32, 38-40.)

Plaintiff has not identified any mistakes made by Kim Warner, Mary Paulis, or Andrea Smith (id. at 29, 32, 34), and could only recall Ronzel Wilson and Sherry Fouch making one mistake each, (id. at 36, 40). The alleged misconduct is not of the same quality and quantity as the mistakes made by plaintiff. Numerous errors made by plaintiff were documented and reported, and plaintiff admitted to making at least a few mistakes before her ninety-day evaluation and at least one after her ninety-day evaluation.

Plaintiff also alleges that Kim Warner, Mary Paulis, and Ronzel Wilson are similarly situated because they were permitted to be disruptive and to create a hostile work environment and were not disciplined for it. (Id. at 29-31, 38.) There have not been

any allegations that plaintiff exhibited similar disruptive behavior and was treated any differently.[6]

Lastly, plaintiff alleges that Sherry Fouch was allowed to transfer from the Naples to the Fort Myers clinic, but when plaintiff requested a transfer, she was not allowed to transfer. (Doc. #28-2, pp. 39-41.) However, plaintiff testified that she was offered the opportunity to transfer to the Edison team, but declined the offer. (Id. at 27-28; Doc. #28-13, p. 2.)

The Court finds that plaintiff is not similarly situated to the five individuals identified. Accordingly, plaintiff has failed to establish a prima facie case of race discrimination and defendant is entitled to entry of summary judgment as to Count I.

## C. Walters' Retaliation Claim – Count II

Defendant asserts that plaintiff's retaliation claim fails as a matter of law because: (1) plaintiff cannot establish a causal connection between her EEO Complaint and her termination and, even if she can establish a causal connection, (2) plaintiff's

---

[6] Plaintiff alleges that she was initially denied time off to go to a medical appointment, but was ultimately allowed to go when Andrea Smith indicated she also needed to leave for a medical appointment. (Doc. #28-2, pp. 34-35.) The Court does not find that Smith was treated more favorably than plaintiff as both plaintiff and Smith were allowed to leave to attend their medical appointments.

probationary employment was terminated for legitimate, non-retaliatory reasons. (Doc. #28, pp. 26-30.)

In addition to prohibiting employment discrimination in and of itself, Title VII also prohibits retaliation against an employee who opposes unlawful employment discrimination or otherwise assists an investigation into unlawful employment discrimination. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (citation omitted). Once plaintiff has established the elements of a retaliation claim, "the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment action, which the plaintiff can rebut with evidence of pretext." Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 896 (11th Cir. 2015).

### 1. Causal Connection

Defendant argues that plaintiff cannot establish causation for her retaliation claim because (1) the decision-maker was unaware of the protected conduct at the time of the adverse action and (2) a two-month gap between the filing of plaintiff's EEO

complaint and her termination is insufficient to establish causation.[7]  (Doc. #28, pp. 27-29.)

"Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . ."  <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2533 (2013).  When establishing a causal connection between the protected activity and the adverse action, generally a plaintiff must show that: (1) the decision-makers were aware of the protected conduct and (2) the protected conduct and adverse action(s) were not "wholly unrelated."  <u>Walker v. Sec'y, U.S. Dep't of Air Force</u>, 518 F. App'x 626, 628 (11th Cir. 2013) (citation omitted).  The decision-maker must actually be aware of the protected activity.  <u>Goldsmith v. City of Atmore</u>, 996 F.2d 1155, 1163 (11th Cir. 1993).  "Causation may be inferred by close temporal proximity between the protected conduct and the materially adverse action taken by the employer."  <u>Walker</u>, 518 F. App'x at 628 (citation omitted); <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (When a plaintiff relies solely on the temporal proximity between the protected activity and the adverse action, the proximity must be "very close."

---

[7] The Court notes that plaintiff is examining the time between the date she filed her EEO complaint and the date she was informed that her employment was being terminated.  The Court notes that although plaintiff was terminated on June 25, 2012, Ms. Kilcrease recommended that her employment be terminated on May 22, 2012 — approximately one month after plaintiff filed her EEO complaint.

(citation omitted)).  Where there is undisputed evidence that the decision-maker did not have knowledge of the employee's protected conduct, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection." Walton-Horton v. Hyundai of Ala., 402 F. App'x 405, 409 (11th Cir. 2010) (alteration omitted) (quoting Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000)). Cf. Brisk v. Shoreline Found., Inc., --- F. App'x ---, No. 15-13028, 2016 WL 2997172, at *2 (11th Cir. May 25, 2016) ("Close temporal proximity . . . is generally sufficient to create a genuine issue as to whether there is a causal connection."). Where the adverse action is caused by an intervening act of misconduct, however, there is no causal connection between the protected conduct and the adverse action. Brisk, 2016 WL 2997172, at *2.

The Court need not determine whether the temporal proximity between plaintiff's protected activity and the adverse action is sufficient to establish causation[8] because plaintiff has failed to

---

[8] It is well established that a three to four month gap between the protected conduct and the adverse action is insufficient to establish causation based on temporal proximity alone. See Clark Cty. Sch. Dist., 532 U.S. at 273-74. When the gap is less than three months, the Eleventh Circuit has had varying opinions as to what is sufficient temporal proximity to establish causal connection between the protected conduct and the adverse action. Compare Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 229-30 (11th Cir. 2011) (per curiam) (finding a two month gap was not "very close" and failed to establish causal connection), with Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (finding seven weeks sufficient to establish causal

establish that the decision-maker, Ms. Kilcrease, was aware of plaintiff's protected conduct at the time she requested plaintiff's employment be terminated.  Ms. Kilcrease was the individual that requested plaintiff's probationary employment be terminated.  (Doc. #28-12, pp. 4, 10.)  Here, defendant has produced evidence establishing that Ms. Kilcrease, the decision-maker, was unaware of plaintiff's EEO Complaint at the time she recommended that plaintiff's employment be terminated.  (Doc. #28-10, p. 7.)  Plaintiff has failed to identify any evidence, direct or circumstantial, to establish otherwise.  As such, the unrebutted evidence fails to establish that Ms. Kilcrease was aware of the protected activity at the time the adverse action was taken.  Without establishing knowledge of the protected activity by the decision-maker, plaintiff is unable to establish causation for her retaliation claim.

Accordingly, defendant's Motion for Summary Judgment is granted as to Count II.

Accordingly, it is now

---

connection).  Further, the time does not begin to run when the protected activity occurs, but rather when the decision-maker becomes aware of the protected activity.  See Castillo v. Roche Labs., Inc., 467 F. App'x 859, 862 (11th Cir. 2012) (citing Hidgon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)); Cain v. Geren, 261 F. App'x 215, 218 (11th Cir. 2008) (quoting Farley, 197 F.3d at 1337) (discussing that there must be close temporal proximity between the awareness by the decision-maker and the adverse employment action).

**ORDERED:**

1.   Defendant's Dispositive Motion for Summary Judgment (Doc. #28) is **GRANTED**.

2.   The Clerk shall terminate all remaining deadlines, including the trial term, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __1st__ day of August, 2016.


JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of record